UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:96-CR-157-H-16

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>REGINALD DWAYNE TOWNSEND | DEFENDANT'S BRIEF ON REVOCATION OF SUPERVISED RELEASE |

**NOW COMES** the Defendant, Reginald Dwayne Townsend, by and through counsel, and hereby submits a sentencing brief in support of his argument that his supervised release violation does not constitute a Grade A violation.

## I. STATEMENT OF THE CASE

On November 11, 1997, Mr. Townsend was sentenced to 168 months of imprisonment after he pled guilty to conspiracy to possess with intent to distribute and distribute cocaine base and cocaine powder, in violation of 21 U.S.C. § 846, and a concurrent term of 60 months of imprisonment for his conviction of use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). This Court also imposed a five-year term of supervised release.

Mr. Townsend was released from custody and began his five-year term of supervised release on May 6, 2009. On April 23, 2014, the United States probation officer moved for revocation, alleging that Mr. Townsend violated the terms of his supervised release through criminal conduct. Specifically, the motion alleged that on April 16, 2014, Mr. Townsend was charged in Cumberland County with the offenses of possession with the intent to sell and deliver

1

marijuana, maintaining a vehicle/dwelling/place for controlled substances, and sell/deliver marijuana. *See* Mot. Revocation, Apr. 23, 2014 (DE-424). The probation officer subsequently amended the motion for revocation on February 5, 2015. The amended motion for revocation alleges that Mr. Townsend pled guilty on August 6, 2014 to sale of marijuana and was sentenced to "8 to 19 months in the North Carolina Department of Corrections." Amended Mot. Revocation, Feb. 5, 2015 (DE-438).

The amended motion for revocation came before this Court for hearing on March 10, 2015. The probation officer submitted a supervised release violation worksheet, contending that Mr. Townsend's criminal conduct constituted a Grade A violation under § 7B1.1(b) of the Sentencing Guidelines. Mr. Townsend objected, asserting that his criminal conduct was not a Grade A violation, because the conduct did not constitute an offense punishable by a term of imprisonment exceeding one year. This Court continued sentencing until May 12, 2015 to allow the parties to brief the issue of whether Mr. Townsend's criminal conduct qualifies as a Grade A violation. *See* Order, Mar. 10, 2015 (DE-443).

## II. ARGUMENT

### A. Classification of Supervised Release Violations

Under Chapter Seven of the United States Sentencing Guidelines Manual, "[t]here are three grades of . . . supervised release violations." UNITED STATES SENTENCING COMMISSION GUIDELINES MANUAL (hereinafter "U.S.S.G.") § 7B1.1(a) (2014). Relevant here, Grade A violations result from "conduct constituting . . . a federal, state, or local offense punishable by a term of imprisonment exceeding one year that . . . is a controlled substance offense" or "any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years." *Id.* § 7B1.1(a)(1). A "controlled substance offense" for purposes of § 7B1.1(a)(1) is defined as "an

2

offense under federal or state law, punishable by imprisonment for a term exceeding one year" involving the "manufacture, import, export, distribution or dispensing of a controlled substance," or the possession of a controlled substance with intent to do any of these acts. *Id.* §§ 4B1.2(b), 7B1.1 cmt. n. 3.

Grade B violations are defined as "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year[,]" *id.* § 7B1.1(a)(2), and Grade C violations cover conduct constituting an "offense punishable by a term of imprisonment of one year or less" or any other violation of supervised release terms. *Id.* § 7B1.1(a)(3). The commentary notes that "[t]he grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding. Rather, the grade of violation is to be based on the defendant's actual conduct." U.S.S.G. § 7B1.1 cmt. n.3. Thus, in order to qualify as a Grade A or Grade B violation, a defendant's criminal conduct must constitute an "offense punishable by a term of imprisonment exceeding one year." U.S.S.G. § 7B1.1(a)(1)-(2).

Accordingly, in order to classify Mr. Townsend's supervised release violation as a Grade A or Grade B violation, the government must show that his criminal conduct constitutes an "offense punishable by a term of imprisonment exceeding one year." U.S.S.G. § 7B1.1(a)(1)-(2). Here, the amended motion for revocation alleges that Mr. Townsend's conduct constitutes a Grade A violation based on his conviction in state court for sale of marijuana, for which he received a sentence of 8-19 months. Assuming, for purposes of this motion, that the government will be able to meet its evidentiary burden of showing by a preponderance of the evidence that Mr. Townsend was convicted of sale of marijuana, Mr. Townsend submits that the amended motion for revocation is factually inaccurate insofar as it asserts that he was sentenced to "8 to 19 months *in the North*

*Carolina Department of Correction*[]." Amended Mot. Revocation, Feb. 5, 2015 (DE-438) (emphasis added). As explained below, Mr. Townsend could not have been sentenced to more than ten months in the custody of the North Carolina Department of Correction. The remaining nine months of his sentence had to be served on post-release supervision. Post-release supervision does not constitute "imprisonment." As such, Mr. Townsend's conduct does not constitute an "offense punishable by a term of imprisonment exceeding one year."

**B. Under *United States v. Simmons*, the Court Must Consider the Maximum Term of Imprisonment the Individual Defendant Could Have Received When Sentenced**

The Fourth Circuit sitting en banc addressed the intersection of North Carolina's "carefully crafted sentencing scheme" and the meaning of an offense punishable by more than one year of imprisonment in *United States v. Simmons*, 649 F.3d 237, 249 (4th Cir. 2011) (en banc). There, the Fourth Circuit instructed that "'the starting place'" for determining whether an offense constitutes a predicate felony for federal purposes is "'the conviction itself.'" *Id.* at 243 (quoting *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 576 (2010)). To determine whether an offense subjected a defendant to "imprisonment for a term exceeding one year," a reviewing court must determine what the actual defendant could have received at the time of his sentencing and not consider the sentence of "an imagined worst-case offender." *Id.* at 249; *accord McNeill v. United States*, 131 S. Ct. 2218, 2224 (2011) (holding that, to determine whether a defendant's prior offense under state law constitutes a "serious drug offense" for purposes of the Armed Career Criminal Act, the sentencing court must consult the "maximum term of imprisonment" applicable to the defendant's offense "at the time of the defendant's state conviction for that offense").

Here, the Court must determine whether Mr. Townsend's criminal conduct exposed him to "imprisonment for a term exceeding one year" when the state court sentenced him. To answer this question, it is necessary to understand North Carolina's "carefully crafted sentencing scheme"

4

under which Mr. Townsend was sentenced. *Simmons*, 649 F.3d at 249. Mr. Townsend was sentenced in 2014, after North Carolina substantially amended its sentencing statutes through the Justice Reinvestment Act. A brief review of the legislation is therefore instructive.

**C. North Carolina's Justice Reinvestment Act of 2011**

On June 23, 2011, the governor of North Carolina signed into law the Justice Reinvestment Act, which significantly revised the law of sentencing and corrections in North Carolina state court.[1] *See* Justice Reinvestment Act, N.C. Sess. L. 2011-192 (hereinafter, "JRA"); *see generally* JAMES M. MARKHAM, THE NORTH CAROLINA JUSTICE REINVESTMENT ACT 2 (2012) (excerpted, Attachment 1). Faced with a burgeoning and expensive prison population, North Carolina legislators enacted the JRA based on recommendations designed to "reduce spending on corrections and reinvest in strategies to increase public safety." HAL PENN, HOUSE BILL 642: JUSTICE REINVESTMENT ACT, at 1 (Jun. 16, 2011) (Attachment 2).

The revisions mandated by the JRA stem from a two-year study conducted as part of the nationwide Justice Reinvestment Project. *See id.*; MARKHAM at 1. The two-year study showed, among other things, that felons who leave prison with no community supervision have higher rates of recidivism than supervised offenders. MARKHAM at 5. In an attempt to reduce this recidivism (and thereby spending), the JRA increased all North Carolina felony sentences by the addition of a term of mandatory post-release supervision. *Id.* For Class F through Class I felons, the period of post-release supervision is nine months. N.C. Gen. Stat. § 15A-1368.2(a). Importantly, this period of post-release supervision must be served upon release from prison, and courts have no discretion to alter this term. *See id.* ("[A] prisoner to whom [post-release supervision] applies *shall*

---

[1] This June 23, 2011 date belies any mistaken belief, harbored by some, that lawmakers revised North Carolina's sentencing scheme in reaction to the Fourth Circuit's decision in *Simmons*, which did not issue until August 17, 2011.

*be* released from prison for post-release supervision on the date equivalent to his maximum imposed prison term . . . less nine months in the case of Class F through I felons.") (emphasis added). Likewise, a defendant cannot waive post-release supervision and elect to serve the nine months of supervision as imprisonment: "A prisoner shall not refuse post-release supervision." *Id.* at § 15A-1368.2(b)

Thus, in accordance with the JRA, effective December 1, 2011, sentencing judges arrive at appropriate sentences for persons convicted of North Carolina felonies in Classes F through I by (1) calculating the appropriate prior record level, N.C. Gen. Stat. § 15A-1340.14; (2) determining whether the sentence will be in the mitigated, presumptive or aggravated range, N.C. Gen. Stat. §§ 15A-1340.13(e) and 15A-1340.16; and (3) selecting a minimum term of imprisonment from the appropriate cell in the punishment chart, N.C. Gen. Stat. § 15A-1340.17. The maximum term of imprisonment is set at 120% of the minimum, plus nine months of post-release supervision. *See* JRA, § 2(e); N.C. Gen. Stat. § 15A-1340.17(d). The maximum term of imprisonment is expressed as a single total number of months, even though nine of those months *must* be imposed as post-release supervision and *cannot* be served in prison. *See id*; *see also* N.C. Gen. Stat. § 15A-1368(1) (defining "post-release supervision" as "[t]he time for which a sentenced prisoner is *released from prison* before the termination of his maximum prison term . . . .") (emphasis added).

Importantly, this period of supervised release may not be revoked by the sentencing court. Instead, authority over revocation lies with the Post-Release Supervision and Parole Commission ("the Commission"). *See* N.C. Gen. Stat. § 143B-720; § 15A-1368(a)(3); § 15A-1368.6; *see also* MARKHAM at 16 (noting that "the controlling authority in [post-release supervision] cases—the body that sets the conditions of supervision and conducts hearings on violations of those conditions—is the Post-Release Supervision and Parole Commission, not the court"). A

supervisee alleged to have violated conditions of supervised release is entitled to both a preliminary hearing and a final hearing before the full Commission. *See* N.C. Gen. Stat. § 15A-1368.6. Moreover, the JRA limits the Commission's ability to revoke release. The Commission may only revoke supervised release and activate imprisonment for the full time period remaining on the supervisee's sentence upon finding that the supervisee has either absconded or committed new criminal conduct. *See* N.C. Gen. Stat. § 15A-1368.3(c)(1).[2] For other violations, the Commission may not revoke supervised release, but instead may return the offender to prison for three months, after which the offender must again be released. *See id.*

### D. Post-Release Supervision is not "Imprisonment"

To prove a Grade A or Grade B violation, the government must show that Mr. Townsend's criminal conduct constitutes an "offense punishable by a term of *imprisonment* exceeding one year." U.S.S.G. § 7B1.1(a)(1)-(2) (emphasis added). When interpreting the language of the federal sentencing guidelines, the court must first consider its plain meaning. *United States v. Hargrove*, 478 F.3d 195, 206 (4th Cir. 2007) (applying plain meaning analysis to guideline interpretation); *see also United States v. Hatten*, 2007 U.S. App. LEXIS 15977, 2007 WL 1977663, *3 (4th Cir. July 5, 2007) (unpublished) (observing that "courts begin with the plain meaning of the guidelines"). If the language is ambiguous, such ambiguity must be construed in the defendant's favor under the rule of lenity. *See United States v. Santos*, 553 U.S. 507, 514 (2008) ("The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.").

---

[2] An exception exists for sex offenders, whose supervised release may be fully revoked for any violation. *See* N.C. Gen. Stat. § 15A-1368.3(c)(1).

7

Few words are plainer than "imprisonment." "Imprisonment" is "[t]he detention of a person contrary to his will. The act of putting or confining a person in prison." *Black's Law Dictionary* 757 (6th ed. 1990). Numerous courts have determined that the plain meaning of "imprisonment" indicates physical confinement. *See, e.g.*, *United States v. Johnson*, 529 U.S. 53, 57 (2000) (contrasting the terms "release" and "imprisoned" in 18 U.S.C. § 3624(e) and observing that "[t]here can be little question about the meaning of the word 'release' in the context of imprisonment. . . . [T]he ordinary, commonsense meaning of release is to be freed from confinement. To say respondent was released while still imprisoned diminishes the concept the word intends to convey."); *United States v. Ide*, 624 F.3d 666, 670 (4th Cir. 2010) (concluding that the word "imprisoned" refers to detention or confinement that occurs before trial, as well as confinement following a conviction); *United States v. Goins*, 516 F.3d 416, 422 (6th Cir. 2008) (reviewing various dictionary definitions of "imprison" and stating that the "clear rule . . . associates 'imprison' with 'confine'").

Applying this ordinary meaning, it is clear that supervised release does not constitute "imprisonment" under U.S.S.G. § 7B1.1(a)—just the opposite. The North Carolina General Statutes define "post-release supervision" as "[t]he time for which a sentenced prisoner is *released from prison* before the termination of his maximum prison term . . . ." N.C. Gen. Stat. § 15A-1368(1) (emphasis added). Thus, an individual on post-release supervision is "released from prison" and is not confined for the final nine-month period of his sentence.

Because a supervisee is not in prison or otherwise confined, the nine-month term of post-release supervision built into North Carolina sentences under the JRA does not count as imprisonment. This commonsense understanding of imprisonment is supported by other statutory provisions within the United States Code, which repeatedly distinguishes "imprisonment" from

8

"release." *See, e.g.*, 18 U.S.C. § 3624(e) ("A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days."); 18 U.S.C. § 3041 (stating that an offender may "be arrested and imprisoned, or released"). Any other interpretation of "imprisonment" would stretch far beyond its plain meaning. And to the extent that any ambiguity exists regarding the word "imprisonment," such ambiguity must be read in Mr. Townsend's favor. *Santos*, 553 U.S. at 514. Accordingly, the period of post-release supervision does not constitute "imprisonment" under U.S.S.G. § 7B1.1(a)(1)-(2).

### E. Mr. Townsend's Conduct Does Not Constitute A State Offense For Which He Could Receive More Than One Year of Imprisonment[3]

The government may assert that because North Carolina considers the nine-month period of supervised release to be part and parcel of an imposed sentence, post-release supervision counts as "imprisonment." But whether *North Carolina* considers supervised release to be part of an offender's sentence is immaterial. What matters here is the meaning of the federal term "imprisonment" and how federal courts interpret this language, which is an issue of first impression before this Court.[4] The amended motion for revocation shows that the maximum amount of prison time the state court could have imposed upon Mr. Townsend was only ten

---

[3] Mr. Townsend acknowledges that his conduct may potentially constitute a federal offense punishable by a term of imprisonment exceeding one year, but the government has not yet presented evidence to support such a theory.

[4] Although neither the Fourth Circuit nor this Court has yet decided this issue, another judge in the Eastern District of North Carolina recently agreed with the defense counsel's position that because post-release supervision imposed under the JRA does not count as "imprisonment," the defendant's prior conviction did not qualify as a predicate felony for purposes of calculating his base offense level under the Sentencing Guidelines. *See United States v. Davis*, No. 5:14-CR-107-BR (E.D.N.C. March 9, 2015).

months. Thus, Mr. Townsend's conduct does not constitute an "offense punishable by a term of imprisonment exceeding one year." U.S.S.G. § 7B1.1(a)(1)-(2).

The government may also assert that because supervised release can theoretically be activated if a supervisee absconds or commits new criminal conduct, post-release supervision in North Carolina should count as "imprisonment." It is well-established, however, that whether a prior conviction constitutes a felony for federal purposes is determined by reviewing "'the conviction *itself.*'" *Simmons*, 649 F.3d at 243 (quoting *Carachuri-Rosendo*, 560 U.S. at 576) (emphasis added). That is, the court must consult the "maximum term of imprisonment" applicable to the defendant's offense "at the time of the defendant's state conviction for that offense." *McNeill*, 131 S. Ct. at 2224. At the time Mr. Townsend was sentenced, the state court could not impose more than one year of prison for his offense. Instead, the maximum punishment available was ten months in prison followed by nine months of supervised release. Additional prison time could only be imposed on a later date as a result of a supervision violation—not for the "conviction itself."

Moreover, the North Carolina sentencing court has no authority to revoke supervised release and impose additional prison time. Instead, supervised release may only be revoked by the Post-Release Supervision and Parole Commission, and only after the opportunity for a full hearing on the alleged violations. *See* N.C. Gen. Stat. § 15A-1368.6; § 15A-1368(a)(3); § 15A-1368.6. Supervised release may not be revoked unless the supervisee violates by absconding or committing new criminal conduct. N.C. Gen. Stat. § 15A-1368.3(c)(1). Lesser violations cannot result in revocation. *See id.* The Fourth Circuit in *Simmons* warned that courts should not evaluate defendants based on "an imagined worst-case offender." *Simmons*, 649 at 249. The hypothetical possibility of additional active imprisonment, imposed at a later date only as the result of limited

supervision violations, by a body separate from and independent of the sentencing court, does not convert the nine-month post-release supervision period imposed at sentencing into a term of "imprisonment."

### III. CONCLUSION

In conclusion, in light of the plain meaning of the term "imprisonment" in U.S.S.G. §§ 7B1.1(a)(1)-(2) and the operation of North Carolina's "carefully crafted sentencing scheme," *Simmons*, 649 F.3d at 249, the nine months of post-release supervision automatically imposed as part of Mr. Townsend's North Carolina sentence do not constitute "imprisonment." Thus, although Mr. Townsend's total sentence was nineteen months, the maximum term of *imprisonment* was both legally and factually only ten months. The sentencing court could not impose imprisonment in excess of one year for Mr. Townsend's conviction. *Id.* at § 15A-1340.17. Nor could Mr. Townsend choose to serve the entirety of his sentence in prison. *Id.* at § 15A-1368.2(b). And even if Mr. Townsend violated the terms of his post-release supervision by absconding or committing new criminal conduct, the sentencing court had no authority to revoke supervised release and activate his sentence. *See* N.C. Gen. Stat. § 143B-720; § 15A-1368(a)(3); § 15A-1368.6. In short, under North Carolina law at the time of Mr. Townsend's sentencing, the state court could not impose more than one year in prison for the "prior conviction itself." As such, Mr. Townsend submits that his criminal conduct is properly classified as a Grade C violation. *See* U.S.S.G. § 7B1.1(a)(3).

WHEREFORE, Mr. Townsend respectfully requests that this Court find only a Grade C violation.

Respectfully submitted this 8th day of April, 2015.

                        THOMAS P. MCNAMARA
                        Federal Public Defender

                        ***/s/ Susan Umstead***
                        SUSAN UMSTEAD
                        Assistant Federal Public Defender
                        Attorney for Defendant
                        Office of the Federal Public Defender
                        150 Fayetteville Street
                        Suite 450, Wachovia Capital Center
                        Raleigh, North Carolina 27601
                        Telephone: 919-856-4236
                        Fax: 919-856-4477
                        E-mail: Susan_Umstead@fd.org
                        N.C. State Bar
                        LR 57.1 Counsel Appointed

*CERTIFICATE OF SERVICE*

      I HEREBY CERTIFY that a copy of the foregoing was served upon:

JOHN H. BENNETT
Assistant United States Attorney
Criminal Division
215 S. Evans Street, Suite 206
Greenville, NC 27858

by electronically filing the foregoing with the Clerk of Court on April 8, 2015 using the CM/ECF system which will send notification of such filing to the above.

      This the 8th day of April, 2015.

      ***/s/ Susan Umstead***
      SUSAN UMSTEAD
      Assistant Federal Public Defender
      Attorney for Defendant
      Office of the Federal Public Defender
      150 Fayetteville Street
      Suite 450, Wachovia Capital Center
      Raleigh, North Carolina 27601
      Telephone: 919-856-4236
      Fax: 919-856-4477
      E-mail: Susan_Umstead@fd.org
      N.C. State Bar
      LR 57.1 Counsel Appointed